IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GLASS, MOLDERS, POTTERY, PLASTICS & ALLIED WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | Case No. 09-2486-CM |
| CONSOLIDATED CONTAINER COMPANY LP, | ) ) ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM AND ORDER**

This is a declaratory judgment action in which plaintiff Glass Molders, Potter, Plastics & Allied Workers International Union ("Union") seeks to compel arbitration under a collective bargaining agreement between it and defendant Consolidated Container Company ("CCC"). This matter is before the court on the parties' cross motions for summary judgment (Docs. 16 & 20). For the reasons set forth below, the court grants Plaintiff's Motion for Summary Judgment (Doc. 20) and denies Defendant's Motion for Summary Judgment (Doc. 16).

**I.      Factual Background**

CCC operates a manufacturing facility in Kansas. Plaintiff, a labor organization, is the certified exclusive bargaining representative for all production and maintenance employees at CCC's Kansas facility. The Union and CCC entered into a Collective Bargaining Agreement ("CBA") that remained in effect until August 2009. The CBA provides that "if an employee has a grievance," he shall follow the four-step process outlined in Article 13. If the grievance is not settled through the four-step

process, then, under Article 14 of the CBA, either the International President of the Union or the Division Human Resources Manager may request that the grievance be submitted to arbitration. (CBA Article 14, Sec.1.)

While the CBA was in effect, the Union filed a grievance with defendant concerning the denial of a claim for medical services. The claim had been denied after Blue Cross and Blue Shield of Georgia, Inc. ("BCBS") determined that the services at issue were not medically necessary. The claim proceeded through the four-step process, but the parties were unable to resolve the claim during step four. The Union then requested that the grievance be resolved by arbitration in accordance with Article 14. CCC denied the claim and plaintiff's request to arbitrate on the premise that the grievance is not governed by the arbitration clause of the CBA. In response, the Union filed this declaratory judgment action, requesting that the court compel arbitration.

Article 14 of the CBA defines the breadth of the arbitration clause: "All information or interpretation wanted in regard to the intention or meaning of these Articles, rules and regulations . . . may be referred by either party to the arbitration procedure set forth above." (Art. 14, Sec. 4.) It also defines and limits the arbitrator's power—"The arbitrator shall have no power to add to, subtract from, or modify the terms of [the CBA]." (Art. 14, Sec. 1.) Article 14 further provides that "[t]he language of the [CBA] as a whole, shall be controlling to determine the intent of the application of the [CBA] to the question being arbitrated." (Art. 14, Sec. 1.)

The terms, conditions, and benefits of the Life Insurance and Health Care Program were negotiated by the parties and are set forth in detail in Article 21 of the CBA. Section 1 provides that CCC shall implement the program and "shall be responsible for the administration of the program including the obligation to pay the benefits stipulated in the coverage when the carrier does not

approve a claim unless such benefits are not medically necessary." (Art. 21, Sec. 1.) The necessity of medical services is discussed throughout Article 21:

- "Covered Medical Expenses" means the reasonable and customary charges, as determined by the health insurance carrier, incurred by you or a dependant for the following . . . . Also, these services and supplies must be . . . (b) medically necessary in terms of generally accepted medical standards. (Art. 21, Sec. 2, p. 49.)

- Certification for Certain Procedures and Treatments . . . No benefits will be payable whether or not certification has been requested, if the procedure is not medically necessary. (Art. 21, Sec. 2, p. 57.)

- Expenses not covered . . . Services (including physician's or dentist's services) or supplies which are not medically necessary in terms generally accepted medical standards as determined by the health insurance carrier . . . . (Art. 21, Sec. 2, p. 70.)

The final sentence of Article 21 states, "For purposes of clarification of the benefits described in this article the Summary Plan Description shall govern." The CBA cannot be changed without the mutual consent of the Union and CCC. (Art. 2, Sec. 3.)

The Summary Plan Description ("SPD") notice provides that "[t]his document which is called the Summary Plan Description (SPD) Booklet, describes the health plan (herein called the Plan) as established by CONSOLIDATED CONTAINER COMPANY (herein called the Employer or Sponsor)." The SPD further states that the Plan is "[t]he arrangement chosen by the Plan Sponsor to fund and provide for delivery of the Employer's health benefits." (SPD, at 43.) The Notice provision states that "if there should be a discrepancy between the SPD Booklet and the Plan Document . . . the Plan Document or the appropriate federal laws and regulations will control." The plan is self-insured by CCC.

Pursuant to the SPD, the Plan Sponsor is "[t]he legal entity that has adopted the Plan and has the authority regarding its operation, amendment and termination." (SPD, at 43.) The SPD states that the Claims Administrator is "[t]he company your Plan Sponsor chose to administer their health

-3-

benefits. Blue Cross and Blue Shield of Georgia was chosen to administer this Plan." (SPD, at 36.) The SPD requires that the Claims Administrator "adhere to the Plan Sponsor's instructions and allow the Plan Sponsor to meet all of the Plan Sponsor's responsibilities under all applicable state and federal law." (SPD, at 29.) The SPD provides the following information for the review of a claim denial:

> If your claim is denied in whole or in part, you will receive a notice of the denial. The notice will explain the reason for the denial.
>
> You, your beneficiary, or a duly authorized representative may appeal any denial of a claim for benefits by filing a written request with the Claims Administrator for a review. In connection with such a request, documents pertinent to the administration of the Plan may be reviewed and issues outlining the basis of the appeal may be submitted. You may have representation throughout the review procedure.
>
> Your request for review must be filed within 60 days after the receipt of the written notice of denial of a claim. A decision will be rendered no later than 30 days after the receipt of the request for review. If there are special circumstances, the decision shall be rendered as soon as possible, but no later than 120 days after receipt of the request for review. The decision after the review shall be in writing and shall include specific reasons for the decision. This decision shall include specific reference to the pertinent benefit provisions of the Plan on which the decision is based. In any event, the Plan Administrator shall have the final authority regarding the disposition of disputed claims.

(SPD, at 46.) The Claims Administrator is not the Plan Administrator. (SPD, at 48.) The SPD concludes by stating, "ERISA will be administered by the Claims Administrator. Any appeals should be sent to Blue Cross and Blue Shield of Georgia, Inc." (SPD, at 49.)

The necessity of medical services is addressed throughout the SPD, including in the following provisions:

- Your coverage does not provide benefits for: 1. Care, supplies, or equipment not Medically Necessary, as determined by the Plan, for the treatment of an injury or illness. (SPD, at 21.)

- The Plan reserves the right to determine whether a service or supply is Medically Necessary. (SPD, at 42.)

- Covered Services [are] Medically Necessary health care services and supplies that are (a) defined as Covered Services in the Participant's Plan, (b) not excluded under such Plan, (c) not Experimental or Investigational and (d) provided in accordance with such Plan. (SPD, at 37.)

- The Plan considers a service Medically Necessary if it is: appropriate and consistent with the diagnosis and the omission of which could adversely affect or fail to improve the patient's condition; compatible with the standards of acceptable medical practice in the United States; not provided solely for your convenience or the convenience of the Physician, health care provider or Hospital; not primarily Custodial Care; and provided in a safe and appropriate setting given the nature of the diagnosis and the severity of the symptoms. For example, a Hospital stay is necessary when treatment cannot be safely provided on an outpatient basis. (SPD, at 42.)

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences there from in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

Arbitration is a matter of contract; a party cannot be required to submit to arbitration any dispute which it has not agreed to submit. *Local 5-857 Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Whether a CBA creates a duty to arbitrate a particular grievance is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise; however, the court may not rule on the potential merits of the underlying claim. *AT & T*, 475 U.S. at 649.

Where a CBA contains an arbitration clause, courts apply a presumption of arbitrability. *Id.* at 650. Where an agreement contains an arbitration clause, the court should not deny an order to arbitrate

"unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582−83 (1960). In the "absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. at 584−85. Any "[d]oubts should be resolved in favor of coverage." *AT & T*, 475 U.S. at 649−50. This presumption is particularly applicable where the arbitration clause is broad. *Id.* at 650.

Without question the arbitration clause in this case is broad, allowing for the arbitration of "[a]ll information or interpretation wanted in regard to the intention or meaning of these Articles, rules and regulations." (Art. 14, Sec. 4.) The question then, is whether the CBA "expressly" excludes the Union's grievance from arbitration. CCC argues that the grievance is excluded from the arbitration provision because (1) the determination of whether medical services are necessary is to be made by defendant's health insurance carrier, not defendant, and (2) the review procedure contained in the SPD demonstrates that there was no intent to arbitrate such grievances.

The court cannot agree. First, the terms of the CBA and SPD do not clearly set forth who makes the determination regarding whether medical services are necessary. Some provisions say that the determination is to be made by health insurance carrier, some say it is to be made by the Plan, and others are silent as to who makes the decision. And the SPD states that the Plan Administrator has the final authority regarding the disposition of disputed claims. The parties interpret the Articles of the CBA differently, leading to a dispute over which entity is the health insurance carrier and which is the Plan Administrator. The parties agree BCBS is the Claims Administrator, and the SPD states that the Claims Administrator is not the Plan Administrator. To determine whether CCC has any responsibility with respect to the medical necessity decision, the Articles of the CBA and SPD must be interpreted

and reconciled. The arbitration clause addresses such disputes and provides that "[a]ll information or interpretation wanted in regard to the intention or meaning of these Articles, rules and regulations . . . may be referred by either party to the arbitration procedure set forth above." (Art. 14, Sec. 4.)

Second, the review procedure contained in the SPD does not conclusively establish that there was no intent to arbitrate. Defendant relies on *Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.*, 17 F.3d 196 (7th Cir. 1994); however, the grievance in that case did not implicate the terms of the CBA because medical necessity was not addressed, or even mentioned, in the CBA. 17 F.3d at 199. In *United Steelworkers of America v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1988), also relied upon by defendant, the court found that the claims review procedure that was incorporated into the collective bargaining agreement showed the parties' intent to exclude benefit determinations from arbitration. Like the CBA in this case, the review procedure expressly stated that the decisions of the Plan Administrator were final and binding, but unlike the CBA here, the agreement in *United Steelworkers*, specifically stated that it was the "express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provision of the Plan, to make determination regarding issues which relate to eligibility for benefits, . . . and to decide questions of Plan interpretation." 162 F.3d at 449.

Here, the Plan does not specifically state that the Plan Administrator has the maximum legal authority to construe and interpret the terms and provisions of the Plan. Moreover, provisions regarding medically necessary services are included in the CBA as well as in the Plan. Because the CBA addresses the necessity of medical services and requires arbitration of the interpretation of any articles of the CBA, the court finds that the review procedure set forth in the SPD does not

conclusively establish that the parties intended to exclude grievances regarding determination of whether benefits are medically necessary from arbitration.

The court's role is to determine whether the grievance is within the scope of the arbitration clause. Many of defendant's argument rely on its disputed interpretation of the CBA; interpretation of the CBA is expressly governed by the arbitration provision. In light of the court's broad reading of the arbitration provision and the CBA's incorporation of provisions regarding "medically necessary," a grievance challenging whether a medical service is necessary may fall within the scope of the arbitration provision. Accordingly, the court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650. Because doubts should be resolved in favor of coverage, the court finds that the Union's grievance must go to the arbitrator.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 20) is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 16) is denied.

Dated this 24th day of September 2010, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**